**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 13-cv-01367-MSK

**MARK SQUIBB,**

    Plaintiff,

v.

**GREENPOINT MORTGAGE FUNDING, INC.,
US BANK, N.A.,
WINDSOR NATIONAL MORTGAGE,
NATIONSTAR MORTGAGE, LLC,
OCWEN LOAN SERVICING, LLC, and,
JOHN DOES 1-10**

    Defendants.

---

**OPINION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

---

**THIS MATTER** comes before the Court pursuant to Mr. Squibb's *pro se* Motion for Temporary Restraining Order and Preliminary Injunction **(# 7)**.

According to Mr. Squibb's *pro se*[1] Complaint[2] **(# 1)**, he is the owner of a parcel of real property in Bellvue, Colorado. The property once contained a residence, but it was destroyed in a fire and "is currently being rebuilt." Mr. Squibb states that he purchased the property in 2000,

---

[1]  The Court, mindful of Mr. Squibb's *pro se* status, construes his pleadings liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).

[2]  Although captioned as a "Verified Complaint," the Complaint does not contain an attestation verifying the factual contentions under penalty of perjury. *See generally* 28 U.S.C. § 1746. The "Verification" portion of Mr. Squibb's Complaint is simply a notary's attestation as to Mr. Squibb having signed the document. Nevertheless, the Court will assume that, if called upon to swear to the contents of the Complaint under penalty of perjury, Mr. Squibb would readily do so, and thus, the Court will treat the Complaint as verified.

and in 2006, contacted Defendant Windsor National Mortgage ("Windsor") to refinance his current indebtedness on the property. He contends that although Windsor made certain representations to him about the nature of the loan during initial discussions, it "switched" various terms of the loan on him at the time of closing, without adequately disclosing the changes to him. He also alleges that he was not given certain disclosures required by the Truth In Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, or the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.*

The Complaint also recites a recent dispute that Mr. Squibb has had with Defendant Nationstar Mortgage, LLC ("Nationstar"), the current servicer of his mortgage. He contends that in February 2013, he contacted Nationstar requesting information on "who the current lender and investor is" on his mortgage. (At some point in or about this time, Mr. Squibb apparently filed a complaint with the United States Consumer Financial Protection Bureau concerning the same issues.) Although he has had several exchanges with Nationstar about his requests, he does not believe the answers he has received have been satisfactory.

Based on these facts, Mr. Squibb asserts seven claims for relief: (i) a violation of TILA against Nationstar; (ii) common-law fraud claims against all Defendants; (iii) common-law negligence against Windsor, in that it failed to "properly train and supervise" the employees that prepared his refinancing; (iv) common-law unjust enrichment against Windsor and Defendant Greenpoint Mortgage Funding, Inc. ("Greenpoint"), in that they received "undisclosed fees" from the refinancing; (v) common-law breach of fiduciary duty, apparently against all Defendants; (vi) TILA violations against Greenpoint, Windsor, and Defendant US Bank; and (vii) a violation of RESPA against Windsor.

The Complaint also requests "injunctive relief" against the Defendants, essentially seeking a declaration that they have "[no] right to a loan on Plaintiff's property" and that Mr. Squibb is invoking his "right of rescission under state law," rending the transactions "null, void, unenforceable and of no legal effect." He states that he "is threatened with immediate, irreparable harm if the mortgage is allowed to move forward," and thus, seeks injunctive relief against the Defendants "prohibiting them from conducting further payment demands against the Plaintiff's property."[3] Mr. Squibb has also filed a Motion for Preliminary Injunction and Temporary Restraining Order **(# 7)**, making essentially identical allegations and requesting essentially identical relief.

Whether provisional relief is sought in the form of a temporary restraining order under Fed. R. Civ. P. 65(b) or a preliminary injunction under Rule 65(a), the required substantive showing is essentially the same. Mr. Squibb must show: (i) that he will suffer an irreparable injury unless the injunction issues; (ii) the threatened injury outweighs whatever damages the injunction might cause to the Defendants; (iii) that the requested relief is not adverse to the public interest; and (iv) that Mr. Squibb has a substantial likelihood of succeeding on the merits of its case.[4] *Schrier v. University of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005).

Here, the Court has some doubt as to whether Mr. Squibb has made an adequate showing on any of the elements, but it reserves its discussion to just two: irreparable injury and likelihood of success.

---

[3] Mr. Squibb offers "to put into the escrow account of the clerk of court a sum equal to the amount owed on the loans sued upon as a bond in good faith."

[4] To obtain such relief on an *ex parte* basis as a temporary restraining order under Rule 65(b), Mr. Squibb would also have to demonstrate that the irreparable injury would result before the Defendants could be heard in opposition and that Mr. Squibb has demonstrated what efforts he has made to notify the Defendants of the request and why such notice should not be required. Fed. R. Civ. P. 65(b)(1)(A), (B).

Turning first to the question of irreparable injury, a party attempting to show an "irreparable injury" sufficient to warrant provisional injunctive relief must demonstrate "a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1157 (10th Cir. 2011). Purely economic loss "is usually insufficient to constitute irreparable harm," as economic losses can readily be compensated with monetary damages. *Id.*; *Schrier*, 427 F.3d at 1267. Here, it is unclear how Mr. Squibb will suffer any harm – much less a harm that cannot be subsequently remedied with repayment of money by the Defendants to Mr. Squibb – if injunctive relief is denied. The relief requested by Mr. Squibb is, essentially, a declaration that he does not have to make mortgage payments to the Defendants. He states that he "will lose the life savings and this asset [the property]" if he remains obligated on the mortgage, or that he will "lose the only realistic [hope] of saving the equity in the home due to negative amortization due to the bait and switch." But it is unclear how that harm will come to pass, particularly insofar as Mr. Squibb represents to the Court that he is prepared to tender the full amount of his current indebtedness to the Court immediately. (He indicates that the balance of the mortgage is $ 336,308, and the insurance proceeds he has received are $ 369,860.) There appears to be no apparent reason why Mr. Squibb cannot continue comfortably making payments on the mortgage as scheduled (much less pay it off completely). Thus, on this record, the Court cannot find that Mr. Squibb has shown, much less can show, that he will suffer an immediate and irreparable harm if the injunctive relief he requests is not granted.

The Court also finds that Mr. Squibb has not demonstrated a likelihood of success on the merits of his claims. For purposes of this analysis, the Court limits its inquiry to the claims Mr. Squibb asserts under TILA and RESPA, as the Court would likely decline to assert supplemental

jurisdiction over the remaining state-law claims if the federal statutory claims were to be dismissed. *See e.g.* 28 U.S.C. § 1367(c)(3). Once again, the injunctive relief that Mr. Squibb requests is, essentially, a declaration that his mortgage has been rescinded or nullified, thus preventing the Defendants from collecting further on it. Thus, the Court examines whether Mr. Squibb's federal statutory claims can, if ultimately proven, give rise to such relief. His RESPA claims do not: even a successful claim under RESPA would only entitle Mr. Squibb to actual damages sustained as a result of the violation, plus non-economic damages of no more than $1,000. 12 U.S.C. § 2605(f). Nothing in RESPA appears to permit rescission of the underlying mortgage transaction.

Rescission of a transaction is a remedy permitted for some kinds of TILA violations, 15 U.S.C. § 1635, but the Court has some doubt as to whether that remedy is available to Mr. Squibb here. Among other things, the right of rescission is not available for transactions involving certain residential mortgages (or the refinancing thereof), and Mr. Squibb must have invoked his right to rescind within three years of entry into the transaction – in this case, no later than March 2009. 15 U.S.C. § 1635(e)(1), (f); *see Goldenhersh v. Aurora Loan Services, LLC*, 2010 WL 3245166 at n. 2 (D. Colo. Aug. 16, 2010) (slip op.). The Court also has doubts as to whether any TILA claims by Mr. Squibb would be timely, given TILA's general statute of limitations of three years, which begins running "on the date of the occurrence of the violation." 15 U.S.C. § 1640(e); *see e.g. Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (finding that borrower had "all information relevant to the discovery of a TILA violation . . . on the day the loan papers were signed"). Accordingly, the Court cannot find that Mr. Squibb is likely to succeed on a TILA claim that could ultimately give rise to a remedy of rescission, such that preliminary injunctive relief in anticipation of such an outcome is warranted.

5

For these reasons, Mr. Squibb's Motion for Temporary Restraining Order and Preliminary Injunction **(# 7)** is **DENIED**.

Dated this 7th day of June, 2013.

**BY THE COURT:**

_____

Marcia S. Krieger
Chief United States District Judge